UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
AUG 2 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-527-GWU

JOYCE HENSON,                                                                                PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

      Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Joyce Henson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an affective disorder, single vessel coronary artery disease status post myocardial infarction, PTCA and stent to the right coronary artery, alcohol addiction in full remission, and Xanax and opiate abuse in full remission. (Tr. 22). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Henson retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments. (Tr. 495). She: (1) could no more than "frequently" stoop, kneel,

7

crouch or climb ramps or stairs; (2) should avoid concentrated exposure to extreme heat or cold; and (3) had the mental capacity to understand, remember, and carry out simple instructions; (4) could maintain attention and concentration for two-hour segments over an eight-hour period; (5) could make adequate judgments and adequate decisions; (6) was able to respond appropriately to others in a task-oriented work setting in which contact with others was casual and infrequent; and (7) and was able to adjust or adapt to routine changes in a work environment. (Tr. 495-6). The VE responded that there were jobs in assembly, bench assembly, inspecting, checking, examining, sorting, and weighing which such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 496-7).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Although the plaintiff partially alleged disability due to the residual effects of a heart attack in April, 2002, as well as other physical problems including diarrhea and back and neck pain (Tr. 87, 471-2), no treating or examining physician listed any specific restrictions. One of the plaintiff's treating cardiologists, Dr. Indiresha Ramanchandra, apparently obtained a stress test and pulmonary function testing early in 2005, and noted that Mrs. Henson's current exercise tolerance was

"functional class I." The New York Heart Association defines Functional Class I as representing an individual who "has cardiac disease but no resulting limitation of physical activity; ordinary physical activity does not cause undue fatigue, palpitation, dyspnea or anginal pain." American Medical Association, Guides to the Evaluation of Permanent Impairment (Fifth Edition, 2001), p. 26. Dr. Mark Burns conducted a consultative physical examination of the plaintiff in September, 2004, described her physical and orthopedic examinations as "normal," and opined that she had the ability to perform activities involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, and traveling. (Tr. 359). The non-exertional restrictions of the hypothetical are largely consistent with the opinion given by a state agency reviewing source, Dr. P. Saranga, although Dr. Saranga thought that the plaintiff was capable of "Medium" level exertion. (Tr. 411-18).[1]

The plaintiff does argue on appeal that the ALJ improperly rejected the mental restrictions of the only examining psychological source, Christopher Catt, a temporarily licensed psychologist. Mr. Catt's examination took place in September, 2004, and he noted the plaintiff's history of having been in recovery from alcohol, Xanax, and opiate abuse for about 15 years. (Tr. 352). She attended Alcoholics

---

[1] Dr. Saranga indicated that the plaintiff could only "occasionally," not "frequently," balance (Tr. 413), but the Dictionary of Occupational Titles (DOT) does not indicate that the jobs of assembler or sorter would involve frequent climbing of ladders or ropes. Nor has the plaintiff raised this issue on appeal.

9

Henson

Anonymous and Narcotics Anonymous meetings and had a sponsor, and stated that she had been "clean" for six years. (Id.). Mr. Catt's examination indicated that Mrs. Henson was "distractible" and her motor activity was "slowed," and she appeared hopeless, fatigued, and irritable, but her recall and memory were normal overall, she had an above-average fund of knowledge, an estimated average IQ, and adequate insight. (Tr. 353-4). Mr. Catt's impression was of a depressive disorder and polysubstance dependence in full sustained remission. (Tr. 354). He opined that Mrs. Henson would have a "marked" (defined as "severely limited and [sic] not precluded") ability to tolerate the stress and pressures of day-to-day employment, a "moderate" (defined as "able to function satisfactorily") limitation in her capacity to respond appropriately to supervision, co-workers, and work pressures in a work setting, and little or no restriction in her ability to handle instructions and sustain attention and concentration to the performance of simple, repetitive tasks. (Tr. 354-5).

A state agency psychologist, Dr. Ilze Sillers, reviewed the evidence and concluded that the opinions of Mr. Catt would be given only partial weight because the "overall case findings," including activities of daily living, did not support the severity of his restrictions. She opined that the plaintiff would have psychological abilities consistent with the factors subsequently given in the hypothetical question.

10

Henson

(Tr. 373). Another state agency psychologist affirmed Dr. Sillers without additional comment. (Tr. 394).

Although Mr. Catt was the only examining psychological source, the opinion of a non-examiner may be accepted over that examiner where the non-examiner has had access to the evidence and clearly explained the reasons for his difference of opinion. Barker v. Shalala, 40 F. 3rd 789, 794 (6th Cir. 1994). While Dr. Sillers' rationale could have been more detailed, she specifically pointed to the Activities of Daily Living. (Tr. 373). Examination of the record shows that the plaintiff herself testified that she had a driver's license and was limited in her driving only because of back and neck pain, but that she was able to shop and drive herself around town and attended Narcotics Anonymous meetings at least twice a week. (Tr. 488, 490). She told one source that she paid her bills with cash, presumably in person, and saw family and friends on a regular basis (Tr. 353). Information provided elsewhere by the plaintiff indicated that she visited her daughter and grandchildren "a lot," and occasionally babysat the three grandchildren or picked them up at school and that she attended church occasionally (Tr. 102, 103, 487, 489). The Commissioner points out on appeal that Mr. Catt's report also had some internal inconsistencies, such as assigning a Global Assessment of Functioning (GAF) score of 55 (Tr. 354), which reflects only "moderate" difficulty with social, occupational, or school functioning per the Diagnostic and Statistical Manual of Mental Disorders.

11

Moreover, the plaintiff subsequently received the psychotropic medication Wellbutrin from her treating family physician, who had diagnosed major depression, and reported by January, 2005 that she was much better. (Tr. 420-4).  The plaintiff testified that the March 15, 2005 hearing that Wellbutrin had helped her "quite a bit," although she still had some days with suicidal thoughts and once every week or two would isolate herself in her house, not wanting to be around people.  (Tr. 493-4). Taken as a whole, there is substantial evidence to support the ALJ's conclusion that the plaintiff's ability to tolerate the stress and pressures of day-to-day employment was not as limited as found by Mr. Catt.

The decision will be affirmed.

This the ___25___ day of August, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE